**Robert R. MILLER, et al., Plaintiffs,**

**v.**

**UNITED STATES of America, Defendant.**

No. 1:88–CV–4601.

United States District Court,
N.D. Ohio,
Eastern Division.

May 22, 1996.

## ORDER

O'MALLEY, District Judge.

With this action, plaintiff Robert R. Miller sought a refund of over $5 million in federal estate taxes.[1] The essential issue in the case was whether certain provisions contained in Miller's will and in a contemporaneous trust agreement disqualified a portion of the trust for the marital tax deduction. Following a bench trial, this Court determined that the trust assets in question did qualify for the marital tax deduction, and that plaintiff was entitled to a refund of estate taxes in the amount of $5,290,409.19, plus statutory interest. Opinion and Order at 20 (Dec. 12, 1995), *modified in part*, Order (Jan. 9, 1996).

Plaintiff has moved for attorney fees and costs, pursuant to 26 U.S.C. § 7430 (docket no. 51). The Court finds that plaintiff is not entitled to attorney fees. Accordingly, the motion for fees is **DENIED.**

### I.

Plaintiff's initial claim for refund, filed June 24, 1998, sought $5,294,298.63, plus statutory interest. This Court ultimately found plaintiff was entitled to a refund of $5,290,-409.19, plus statutory interest. The primary issues in the case were: (1) whether certain trust property was "qualified terminable interest property" ("QTIP"); and (2) whether the Ohio Apportionment statute applied to determine the apportionment of the estate taxes. After a trial to the bench, this Court agreed with plaintiff on both of these issues: the trust property at issue was QTIP property, and the Ohio Apportionment statute did apply. Order at 20–21 (Dec. 12, 1995). In

---

1. Although the true plaintiff in this case is the estate of Robert R. Miller, the Court refers to

sum, plaintiff substantially prevailed with respect to both the amount in controversy and the primary issues presented to the Court for resolution. Having substantially prevailed, plaintiff now seeks attorney fees in the amount of approximately $185,000, pursuant to 26 U.S.C. § 7430.

### II.

Section 7430 of the Internal Revenue Code, entitled "Awarding of costs and certain fees," provides, in pertinent part:

(a) **In general.**—In any ... court proceeding which is brought by or against the United States in connection with the determination, collection, or refund of any tax, interest, or penalty under this title, the prevailing party may be awarded a judgment or a settlement for—

\*　　\*　　\*

(2) reasonable litigation costs incurred in connection with such court proceeding.

26 U.S.C. § 7430(a). The statute goes on to define "prevailing party," in pertinent part, as follows:

(c) **Definitions.**—For purposes of this section—

\*　　\*　　\*

(4) **Prevailing Party.**—

(A) **In general.**—The term "prevailing party" means any party in any proceeding to which subsection (a) applies (other than the United States or any creditor of the taxpayer involved)—

(i) which establishes that the position of the United States in the proceeding was not substantially justified;

(ii) which—

(I) has substantially prevailed with respect to the amount in controversy, or

---

plaintiff as Miller, himself, for ease of reference.

644

**(II)** has substantially prevailed with respect to the most significant issue or set of issues presented, and

**(iii)** which ... meets the [net worth] requirements of section 2412(d)(2)(B) of title 28 (as so in effect).

26 U.S.C. § 7430(c)(4)(A).

■ The pertinent net worth requirements in title 28 provide that a person does not qualify as a prevailing party unless he is "an individual whose net worth did not exceed $2,000,000 at the time the civil action was filed." 28 U.S.C. § 2412(d)(2)(B)(i).[2] By specifying that a "prevailing party" must meet the requirements of 28 U.S.C. § 2412(d)(2)(B), the statute incorporates the net worth requirements of the Equal Access to Justice Act. *Estate of Woll v. United States*, 44 F.3d 464, 467 (7th Cir.1994).

The United States attacks plaintiff's qualifications as a "prevailing party" on two grounds. First, the United States argues plaintiff cannot "establish[ ] that the position of the United States in the proceeding was not substantially justified." 26 U.S.C. § 7430(c)(4)(A)(i). Second, the United States argues plaintiff's net worth exceeded $2 million when he filed this action, so he cannot show he "meets the [net worth] requirements of section 2412(d)(2)(B) of title 28." *Id.* at § 7430(c)(4)(A)(iii).[3] The Court concludes the United States' second argument is well-taken: the net worth of the estate exceeds the $2 million ceiling, rendering the estate ineligible to recover its costs and fees. Given this conclusion, the Court does not reach the question of whether the government's position was "substantially justified," nor whether the attorney fees requested are "reasonable."

### III.

As noted, by specifying that a "prevailing party" must meet the requirements of 28

U.S.C. § 2412(d)(2)(B), the statute incorporates the net worth requirements of the Equal Access to Justice Act ("EAJA"). The EAJA "provides limited exceptions to the general rule of sovereign immunity where recovery of costs against the United States is concerned. The exception should not be construed liberally." *National Truck Equip. v. Nat. Hwy. Safety Admin.*, 972 F.2d 669, 671 (6th Cir.1992). The fundamental premise of the EAJA is that "EAJA awards should be available where the burden of attorney's fees would have deterred the litigation challenging the government's actions, but not where no such deterrence exists." *Id.* at 672 (*quoting SEC v. Comserv Corp.*, 908 F.2d 1407, 1415–16 (8th Cir.1990)). Congress's statement of purpose behind the EAJA was that the legislation would "serve as an 'equalizer' for those litigants who could otherwise not afford costs of litigation against the federal government." *Id.* at 673. "When [a litigant has] the economic power to pursue litigation against the government without being deterred by the costs, the congressional purposes of the EAJA are undermined by an award to [that litigant]." *Id.* at 674.

■ Plaintiff argues that he was "an individual whose net worth did not exceed $2,000,000 at the time the civil action was filed," and thus eligible for a fee award. The government disagrees with plaintiff's net worth calculation. The dispute boils down to how the net worth of the estate is calculated for the purpose of determining eligibility for an EAJA award of attorney fees.

The case of *Estate of Woll v. United States*, 44 F.3d 464 (7th Cir.1994), is highly instructive. The net worth of Woll's estate, at the time of Woll's death, exceeded $2 million. The estate eventually filed a lawsuit against the federal government for an estate tax refund, and prevailed. In seeking an

---

**2.** In addition to defining "prevailing parties" as limited to those *individuals* with net worths of less than $2 million, the statute also limits the definition to *business-type entities* with net worths of less than $7 million. 28 U.S.C. § 2412(d)(2)(B)(ii). Although one court has applied the $7 million limit to estates, deeming an estate to be an "organization," *Boatmen's First Nat. Bank of Kansas City v. United States*, 723

F.Supp. 163, 169 (W.D.Mo.1989), the better view is clearly to apply the $2 million limit. *Estate of Woll*, 44 F.3d 464, 468 (7th Cir.1994).

**3.** The United States does not argue, for good reason, that plaintiff did not substantially prevail with respect to the amount in controversy and/or the most significant issues presented.

EAJA award of attorney fees, the estate noted that, even though its net worth exceeded $2 million at the time of Woll's death, its net worth had diminished to about $1 million *at the time it filed the refund action.* Noting that EAJA requires an individual's net worth "not [to] exceed $2,000,000 *at the time the civil action was filed,*" the estate insisted it met the net worth requirement. 28 U.S.C. § 2412(d)(2)(B)(i). The district court agreed, further found that the government's position was "absurd" and thus not substantially justified, and awarded attorney fees and costs of about $17,800. *Id.* at 467.

The Seventh Circuit reversed, disagreeing with the district court's calculation of the estate's net worth. The court concluded that "assets distributed in advance of suit cannot be disregarded in calculating the net worth of the estate." *Id.* at 468. The court noted that the underlying purpose of the EAJA was "to make it economically feasible for private parties to challenge the unreasonable actions of a government with superior resources," *id.,* and concluded that "[t]he practical ability of a given estate to shoulder the burden of litigation is best judged by the net value of the entire estate, including assets which have already been distributed by the date of suit," *id.* at 469. In the case of Woll, these assets included assets Woll had placed in a revocable trust during his lifetime. *Id.* at 466.

In this case, Robert Miller had a gross estate of over $13 million, including about $10.6 million he had placed in a revocable trust during his lifetime. Under the trust agreement, possession and enjoyment of the trust assets were reserved exclusively to Mr. Miller until after death; he retained complete control over the income and corpus. Ultimately, this $10.6 million in trust became an allowable deduction as a bequest to Miller's spouse, reducing the taxable estate. After subtracting from the total gross estate this $10.6 million, and also funeral expenses, debts, and estate tax, the net worth of Miller's estate was reduced to about $1.4 million.

■ Pursuant to the analysis in *Estate of Woll,* however, the net worth of plaintiff in this case for the purpose of determining eligibility for an award of attorney fees under

EAJA exceeds $2 million. Including the assets Miller had placed in a revocable trust during his lifetime, Miller had a net worth of at least $12 million at the time of his death, for all practical purposes. It is this amount that is properly examined in assessing the propriety of a motion for attorney fees under EAJA. Plaintiff correctly argues that the government accepted a valuation of the net worth of the estate, at the date of death, of about $1.4 million, as reflected in plaintiff's estate tax return. This amount, however, is not the true measure of plaintiff's "economic power to pursue litigation against the government without being deterred by the costs." *National Truck Equip.,* 972 F.2d at 674. The better measure of whether the court should make an exception to the general rule of sovereign immunity for recovery of costs against the United States is the *practical* net worth of the decedent, as measured by those assets over which he retained complete control at death, minus applicable liabilities—in this case, at least $12 million. It is this amount that accurately appraises "[t]he practical ability of a given estate to shoulder the burden of litigation." *Estate of Woll,* 44 F.3d at 469.

■ The Court does not mean, in this opinion, to set out a hard and fast rule as to how net worth must be measured for purposes of determining eligibility for an award of attorney fees under 26 U.S.C. § 7430 or 28 U.S.C. § 2412(d)(2)(B). The Court does note, however, that 26 U.S.C. § 7430 states "the prevailing party *may* be awarded a judgment or a settlement for ... reasonable litigation costs." *See In Re Rasbury,* 24 F.3d 159, 166 (11th Cir.1994) (noting that court has discretion on whether to award attorney fees). The Court's discretion in deciding whether to make such an award must be made against the background principles that: (1) exceptions to sovereign immunity must be construed narrowly; and (2) the congressional purposes of the EAJA are undermined by an award to a litigant which, when measured realistically, has the economic power to pursue litigation against the government without being deterred by the costs. The Court finds that, on the facts of this case, an award of attorney fees to plaintiff is

inappropriate because, measured realistically, plaintiff does not meet the net worth requirements set out in 28 U.S.C. § 2412(d)(2)(B)(i). Accordingly, the motion for attorney fees is DENIED.

**IT IS SO ORDERED.**